IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHELLE WILSON

      Plaintiff,

v.                                                                                        No.

WAL-MART ASSOCIATES, INC.                                    JURY TRIAL DEMANDED

      Defendant.

## COMPLAINT

Plaintiff Michelle Wilson files this Complaint against Defendant Wal-Mart Associates, Inc., and in support thereof avers as follows:

### Jurisdiction and Venue

1.     The jurisdiction of this Court is based upon 28 U. S. C. §1331, in that this Court has original jurisdiction of Counts I - III of this Complaint, which are based upon laws of the United States of America, the Americans with Disabilities Act, 42 U.S.C. §12101, as amended by the ADA Amendments Act of 2008 ("ADA"); the Age Discrimination in Employment Act, 29 U.S.C. §621 ("ADEA"); and the Family and Medical Leave Act, 29 U. S. C. §2601 ("FMLA").

2.     Plaintiff requests a trial by jury of the claims raised herein.

3.     Venue is appropriate in this Court pursuant to 28 U. S. C. §1392(b) in that Defendant has ongoing business operations in this District, Plaintiff resides and worked within this District, and the events giving rise to Plaintiff's claim occurred in this District.

4.     The amount in controversy exceeds $150,000.00, exclusive of interest and costs.

5.     Plaintiff has complied with the applicable administrative remedies by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC"), on August 8, 2023,

1

EEOC Charge no. 530-2023-08174; and simultaneously dual filing a Complaint with the Pennsylvania Human Relations Commission ("PHRC") (Case number unknown).

6.      On October 2, 2023, the EEOC notified Plaintiff that it administratively closed Plaintiff's Charge and issued a Notice of Right to Sue, permitting Plaintiff to file her causes of action under the ADA and ADEA in this court.

7.      Upon receipt of applicable authority from the PHRC, Plaintiff intends to amend this Complaint and assert causes of action for disability and age discrimination under the Pennsylvania Human Relations Act, 43 P. S. §955(a), ("PHRA").

**PARTIES**

8.      Plaintiff Michelle Wilson ("Wilson") is an adult female who resides at 89 Bella Rosa Court, Royersford, PA 19468.

9.      Defendant Wal-Mart Associates, Inc. ("Walmart") is a  Delaware corporation that operates a principal place of business in the Commonwealth of Pennsylvania at 1515 Bethlehem Pike, Hatfield (Montgomery County), PA 19440; and maintains a corporate headquarters at 702 S.W. 8th Street, Bentonville, AK 72716.

10.      At all times relevant hereto, Defendant was acting through their agents, servants, and employees, who were acting within the scope of their authority, in the course of their employment, and under the direct control of Walmart.

**FACTUAL BACKGROUND**

***Wilson's Career at Walmart***

11.      Wilson is 53 years of age.

12.      On June 21, 1994, Wilson commenced employment with Walmart, she left Walmart in June 2011, and returned six months later.

13.      In total, Wilson was employed by Walmart for over 27 years.

2

14.     Wilson's gross earnings in 2022 were $133,744.32.

15.     During Wilson's career at Walmart, she served as an Asset Protection Manager, Asset Protection Coordinator, Regional Assistant, Manager of Loss Prevention, District Supervisor, and in numerous other positions.

16.     In April 2022, Wilson became an Academy Coach.

17.     As an Academy Coach, Wilson's principal duties included coordinating and overseeing job-related activities and assignments such as developing and maintaining relationships with key Walmart stakeholders, conducting training classes, providing supervision and development opportunities for associates by hiring, training, and mentoring, assigning duties and conducting visits within facilities to ensure learning sessions are being completed, engaging in feedback with Peer Academy leaders, conducting facility audits, and supporting change initiatives.

18.     Wilson worked out of the Walmart store located in Hatfield, PA.

19.     Wilson reported to Stan Tilton, ("Tilton"), Academy Lead (approximate age: mid-30's).

20.     In the Academy Coach position, Wilson was expected to earn a salary and bonus of approximately $90,000.00, plus employment benefits.

21.     Throughout Wilson's career at Walmart she received positive performance evaluations.

22.     In her fiscal year 2022 Annual Evaluation, for the position of Academy Coach, Wilson received a successful rating.

23.     Comments in Wilson's fiscal year 2022 Annual Evaluation included, "Michelle possesses a high professional pedigree, and has built trusting relationships with leadership. She

has consistently delivered on any goals and tasks given. Michelle uses her time wisely and avoids becoming involved in endless details."

### Wilson's Meniere's Disease

24. Wilson suffers from Meniere's Disease.

25. Meniere's Disease is an inner-ear disorder that causes dizzy spells, vertigo, and hearing loss.

26. Symptoms of Meniere's Disease include unexpected vertigo attacks, nausea, vomiting, sweating, tinnitus (ringing in the ears), loss of balance, and headaches.

27. Wilson's Meniere's disease impacts certain daily activities, including sleep, hearing (she has loss of hearing in one ear), driving,  bending, and concentration.

28. As a consequence of Meniere's Disease, Wilson had to take leaves of absence from work during her career in Walmart to manage her condition, including in 2021 and 2022.

### Wilson's 2023 Leave From Work

29. In the Spring of 2023, Wilson made an accommodation request to Academy Lead Tilton, based upon her health and Meniere's disease, which included not having to stand while completing Zoom training (approximately 7 hours), as standing, using a laptop screen, looking at a TV screen with 21 associates and using an iPad, would have the consequence of experiencing vertigo and vestibular headaches.

30. Academy Lead Tilton, advised Wilson that he would speak to his boss, Shane (last name unknown) Senior Manager Academy Operations, and follow up with Wilson.

31. Tilton never followed up with Wilson regarding the accommodation request.

32. Wilson had a severe case of COVID-19 and as a consequence, she had to take a leave of absence beginning March 20, 2023.

4

33.    The COVID-19, triggered an exacerbation of Wilson's Meniere's Disease that led to Wilson having sinus surgery; as a consequence, Wilson as out of work for an approved leave of absence under the FMLA through June 12, 2023.

34.    Following the exhaustion of FMLA leave, Walmart initially granted Wilson an extended period of leave as a reasonable accommodation under the ADA (the 2023 leave under the FMLA and ADA are collectively referred to as, "the 2023 Leave")

35.    Throughout the 2023 leave, Wilson kept her boss, Academy Lead Tilton, informed about her medical condition, progress, and the expected timeframe by which she was expected to return to work.

36.    Tilton advised Wilson that the date to return to work was up to Wilson.

37.    On June 15, 2023, Wilson advised Tilton that her treating physician provided her an expected return to work date of July 5, 2023.

38.    Five days later, on June 20, 2023, Tilton called Wilson on her cell phone and stated that due to her leave of absence, her job was not protected, and her position as Academy Coach was going to be posted, and if the position was filled, she would have 30 days to apply for another job at Walmart.

39.    Wilson told Tilton that she did not understand why her job was being posted, as by the time that someone would be hired, it would be well after her return date of July 5, 2023.

40.    Tilton responded to Wilson, "it did not matter", that Wilson's job was going to be posted, he has a business to run with business needs, and that Wilson should understand.

41.    During the June 20, 2023 conversation, Wilson asked Tilton if her position was still open, and Tilton advised Wilson that no one had been hired.

5

42.     Tilton advised Wilson that if her job was filled she would be permitted to apply for any jobs posted in the following 30 days, and if she did not find a new position, she would be terminated.

43.     On June 30, 2023, Tilton advised Wilson that her position had been filled.

44.     As of July 5, 2023, Wilson's treating physician released her to return to work.

45.     Walmart never notified Wilson as to when the 30 day period to find a job commenced.

46.     Wilson was not provided with any assistance with finding a job at Walmart.

47.     After July 5, 2023, Wilson applied on her own for several Walmart positions for which she was qualified, including her own Academy Coach position.

48.     Wilson was not contacted by Walmart for any interviews and not hired for any position for which she applied.

49.     Walmart did not follow its termination process even though it effectively terminated Wilson, and it failed to pay Wilson six days PTO due for 2023, and other accrued time.

### *Wilson's Replacement as an Academy Coach*

50.     On June 21, 2023, Tilton posted Wilson's Academy Coach job.

51.     Walmart hired Russ Cunningham ("Cunningham") (approximate age: mid-20's) to replace Wilson as an Academy Coach.

52.     On July 29, 2023, Cunningham commenced employment as an Academy Coach, 24 days after the date on Wilson had been released to return to work from her leave.

### *Walmart's Favorable Treatment of a Younger Academy Coach*

53.    Danae Brewer ("Brewer") (approximate age: mid-30's), an Academy Coach, who reports to Tilton, was initially placed on FMLA leave in 2023.

54.    After Brewer's FMLA leave was exhausted, Brewer was not replaced and she was able to return to work as an Academy Coach after an extended period of leave.

55.    Walmart treated Brewer, a similarly situated, substantially younger employee, who initially was on FMLA leave that was exhausted differently than Wilson.

### *Wilson's Damages*

56.    Wilson's reasonable accommodate request to remain on leave until July 5, 2023 and then return to her job would have caused no undue burden to Walmart.

57.    Walmart's actions towards Wilson were willful and outrageous in that its motives and conduct as set forth above was malicious, wanton, reckless and oppressive.

58.    Walmart's actions have caused Wilson considerable financial loss, including lost wages, the loss of 336 shares of Walmart stock that had not fully vested (having an approximate current market value of $23,000.00), lost health insurance benefits, and substantial emotional/mental distress, embarrassment, humiliation, and loss of self-esteem.

59.    Walmart's proffered reason for its treatment of Wilson is pretextual; as it had discriminatory motives based upon Wilson's health and age, her FMLA leave, and her request for a reasonable accommodation.

### COUNT I

### VIOLATION OF AMERICANS WITH DISABILITIES ACT, AS AMENDED BY THE ADA AMENDMENTS ACT OF 2008

### 42 U. S. C. §12101, et. seq.

60.    Paragraphs 1 to 59 are incorporated herein as if set forth in full.

61.     Wilson has a disability under the ADA in the form of a physical impairment that substantially limits one or more major life activities as compared to the average person or most people in the general population.

62.     Wilson is/was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodations.

63.     Walmart was aware of Wilson's disability.

64.     Wilson had a record of impairment.

65.     Wilson was regarded as having an impairment.

66.     Walmart refused to provide Wilson a reasonable accommodation to the known physical limitations of Wilson, an otherwise qualified individual with a disability.

67.     Walmart could have reasonably accommodated Wilson.

68.     Walmart treated Wilson differently than other similarly situated individuals who are, or were not disabled, or whom Walmart did not regard as disabled.

69.     Wilson suffered adverse employment actions as a result of Walmart's discrimination based upon a known disability and request for accommodation.

70.     Walmart retaliated against Wilson by terminating her employment due to her disability and request for a permanent reasonable accommodation.

WHEREFORE, Plaintiff Michelle Wilson requests that this Court enter judgment in her favor and against Defendant Wal-Mart Associates, Inc., and that this Court, award Plaintiff all damages available under the Americans with Disabilities Act, as amended, including monetary damages exceeding $150,000.00, compensatory damages, punitive damages, reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the Court deems appropriate.

## COUNT II

## VIOLATION OF FAMILY AND MEDICAL LEAVE ACT

### 29 U. S. C. §2601, et. seq.

71.   Paragraphs 1 to 70 are incorporated herein as if set forth in full.

72.   Wilson was an eligible employee under the FMLA in that she was continuously employed by Walmart for at least 12 months for at least 1,250 hours of service prior to March 20, 2023.

73.   Walmart is an employer subject to the FMLA.

74.   Wilson experienced a "serious health condition" as defined by the FMLA, which resulted in her being unable to work.

75.   As an FMLA eligible employee, Wilson was entitled to take FMLA leave.

76.   Wilson was entitled to a minimum of twelve workweeks of leave under the FMLA during any rolling twelve-month period.

77.   Walmart retaliated against Wilson by terminating her employment in retaliation for Wilson availing herself of FMLA protected rights.

78.   Walmart's conduct with respect to Wilson violates the FMLA.

79.   Wilson has sustained substantial damage as a result of Walmart's actions.

WHEREFORE, Plaintiff Michelle Wilson requests that this Court enter judgment in his favor and against Defendant Wal-Mart Associates, Inc., and award Plaintiff monetary damages equal to the amount of wages, employment benefits, other, any actual monetary losses sustained, interest, liquidated damages as defined by the Family and Medical Leave Act, reasonable attorneys' fees, reasonable expert witness fees, interest, costs, and any other relief which the court deems appropriate.

## COUNT III

### VIOLATION OF AGE DISCRIMINATION IN EMPLOYMENT ACT

### 29 U. S. C. § 621 et. seq.

80.     Paragraphs 1 to 79 are incorporated herein by reference, as if set forth in full.

81.     Walmart have treated Wilson differently than substantially younger employees and continued to employ substantially younger employees to perform Wilson's duties, thereby discriminating against Wilson based upon her age in violation of the ADEA.

82.     Walmart' actions towards Wilson were arbitrary and capricious, and based on a discriminatory animus towards older employees at the workplace.

83.     Walmart' actions are per se unlawful and constitute age discrimination in violation of the ADEA.

WHEREFORE, Plaintiff Michelle Wilson requests that this Court enter judgment in her favor and against Defendant Walmart Associates, Inc., and that this Court enter a declaratory judgment that Defendant's actions complained of herein, violate and continue to violate the enactments of the federal legislature, award Plaintiff damages exceeding $150,000.00, in the form of all compensation and monetary losses, which she has been denied, including back pay, front pay, pre-judgment interest, liquidated damages as defined by the Age Discrimination in Employment Act, reasonable attorneys' fees, expert witness fees, costs, and any other relief, which the court deems appropriate.

/S/ Andrew S. Abramson, Esq.

_____

Andrew S. Abramson, Esq.
Abramson Employment Law, LLC
790 Penllyn Blue Bell Pike
Suite 205
Blue Bell, PA 19422
telephone: 267-470-4742
email: asa@aemploylaw.com

Attorney for Plaintiff Michelle Wilson

Dated: October 16, 2023